# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
C.A. NO.: _____

| | | |
|---|---|---|
| Schumacher Homes of North Carolina, Inc., and Richard Smothers, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | **VERIFIED COMPLAINT** |
| Keith Buchanan and Dianna Buchanan, individually, | ) ) ) | |
| Defendants. | ) ) ) | |

Plaintiffs Schumacher Homes of North Carolina, Inc. (hereinafter "Schumacher Homes"), and Richard Smothers (hereinafter "Smothers"), by and through their undersigned counsel, would respectfully show this Honorable Court the following:

## OVERVIEW

This Complaint is an action for temporary, preliminary, and permanent injunctive relief and monetary damages for (i) defamation; (ii) commercial defamation; (iii) tortious interference with contract; (iv) tortious interference with prospective economic advantage; (v) unfair or deceptive business practices in violation of N.C. Gen. Stat. §75-1.1; and (vi) civil conspiracy.

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff Schumacher Homes is a corporation duly organized under the laws of the State of Ohio, is authorized to conduct business, through its subsidiaries and in its own behalf, in the State of North Carolina and many other states, and with its corporate offices and nerve center in the State of Ohio.

2. Plaintiff Richard Smothers is a citizen and resident of Anderson County in the State of South Carolina.

3. Upon information and belief, Defendant Keith Buchanan is a citizen and resident of McDowell County in the State of North Carolina.

4. Upon information and belief, Defendant Dianna Buchanan is a citizen and resident of McDowell County in the State of North Carolina.

5. There is complete diversity of citizenship between the Plaintiffs and the Defendants.

6. The amount in controversy exceeds $75,000.

7. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332.

8. Venue is proper because, *inter alia*, Defendants reside in this judicial district and division and the underlying dispute between Plaintiffs and Defendants giving rise to Defendants' unlawful conduct described herein is based on a commercial transaction that took place in this judicial district and division.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

### A. BACKGROUND INFORMATION REGARDING THE PLAINTIFFS

9. Schumacher Homes is a licensed General Contractor in the State of North Carolina.

10. Schumacher Homes is one of the largest residential, custom home builders in the United States.

11. Schumacher Homes and its affiliates have built over 19,000 homes across 22 states since its formation in the early 1990s.

12.     Schumacher Homes builds high-quality custom homes and has received numerous awards and recognitions for its commitment to excellence in construction standards and customer satisfaction, including, but not limited to the following:

a.      The National Housing Quality Award for Excellence;

b.      The National Gold Winning Home of the Year, as recognized by the National Association of Home Builders;

c.      International Builders Show for Best Multi-Generational Homes;

d.      National Gold Winning Best Digital Sales Tool / Use of Technology by the National Association of Homebuilders;

e.      National Gold Winning Website of the Year by the National Association of Home Builders;

f.      National Gold Winning E-mail Marketing Campaign of the Year by the National Association of Home Builders;

g.      Ranked Number One in Best Design Studio in America Award by the National Association of Home Builders

h.      2020 Platinum Builder Award Winner for excellence in customer satisfaction, demonstrating skilled craftsmanship constructing inspired homes, and leadership in design and construction technology;

i.      Ranked Best in American Living Award for Best One-of-a-Kind Custom Homes over 6,500 sq. ft., presented by Professional Builder Magazine; and

j.      Watermark Award for Best Owner Bath in a Custom Home in the Nation, presented by Builder magazine.

13.     Schumacher Homes has spent decades dedicating itself to meeting client needs and building a well-known and trusted brand around high-quality custom or semi-custom homes. As a result, and as the above-mentioned awards reflect, Schumacher Homes has an excellent reputation in the residential construction industry.

14.     Smothers serves as the Regional Manager for the Carolinas Region for Schumacher Homes.

15.     Smothers is a General Contractor with an Unlimited License issued by the State of North Carolina and is the Qualifying General Contractor for Schumacher Homes.

16.     As a licensed General Contractor in the State of North Carolina, Smothers has demonstrated the following qualifications to the satisfaction of the North Carolina Licensing Board for Contractors ("Board"), as required by N.C. Gen. Stat. § 87-10:

      a.     Possess good moral character as determined by the Board;

      b.     Shows evidence of financial responsibility, as determined by the Board;

      c.     Passed an examination that contained subject matter related to contracting classification(s); and

      d.     Adhered to various capital and liability requirements.

17.     As the holder of an Unlimited License, Smothers is entitled to act as a General Contractor without restriction as to the value of any single project.

18.     As the Qualified General Contractor for Schumacher Homes, Smothers, pursuant to N.C. Gen. Stat. § 87-10, passed the Board's examination and demonstrated the following proficiencies:

      a.     The ability to practically apply his knowledge of the profession of contracting;

b.    The capacity to read plans and specifications, knowledge of relevant matters contained in the North Carolina State Building Code, knowledge of estimating costs, construction, ethics, and other similar matters pertaining to the contracting business; and

c.    The knowledge as to the responsibilities of a contractor to the public and of the requirements of the laws of the State of North Carolina relating to contractors, construction, and liens.

19.    In addition to the proficiencies and licenses described above, Smothers has over twenty (20) years of experience in the construction industry.

20.    Smothers has received numerous awards, including being the youngest inductee into the Hall of Fame for the North Coast Building Industry Association, which is a non-profit association dedicated to the advancement of the building industry.

21.    Smothers has spent decades building high-quality custom homes and dedicating himself to his clients and his community. As a result, and as the above-referenced awards and accomplishments reflect, Smothers has an excellent reputation in the residential construction industry.

22.    North Carolina law defines a "general contractor" as "any person or…corporation who for a fixed price, commission, fee or wage, undertakes…to construct or who undertakes to superintend or manage, on his own behalf or for any person…that is not licensed as a general contractor…the construction of any building…where the cost of the undertaking is thirty thousand dollars ($30,000) or more…".  See N.C. Gen. Stat. §87-1.

23.    Following the procedures set forth by North Carolina law, Schumacher Homes applied for and received a general contractor's license from the North Carolina General

Contractor's Licensing Board. This licensure was active and in effect at all times during the construction of the Defendants' home and has remained in effect at all times relevant herein.

24. As allowed by N.C. Gen. Stat. §87-10, Schumacher Homes identified Smothers as the "qualifier" or "qualifying party" for purposes of its general contractor application. As set forth above, Smothers was and is an Unlimited General Contractor, duly licensed by the State of North Carolina.

25. Pursuant to 21 NCAC 12A .0208. the "phrase 'undertakes to superintend or manage' as used in G.S. 87-1 to describe a…corporation deemed to be a general contractor means that the…corporation shall be responsible for superintending or managing the construction of an entire project, and either contracts directly with subcontractors to perform the construction for the project or is compensated for superintending or managing the project…".

26. At all relevant times herein, Schumacher Homes, acting by and through its authorized agents, superintended and/or managed the construction of the Defendants' home by contracting with and supervising various subcontractors, as allowed by North Carolina law.

**B. THE PRIOR RELATIONSHIP BETWEEN THE PARTIES**

27. Plaintiffs incorporate and re-allege the preceding paragraphs as if fully set forth herein.

28. On or about September 14, 2018, Schumacher Homes entered into a valid and enforceable contract with Defendants to build a custom home.

29. During the construction of Defendants' home, Schumacher Homes repaired, remedied, and/or made accommodations for any and all issues that were brought to the attention of Schumacher Homes by Defendants.

30.     For instance, Schumacher Homes replaced Defendants' thermostat at no additional cost to Defendants when the thermostat installed in the home did not work as intended.

31.     As sometimes happens in the construction process, not every homeowner is satisfied with every proposed accommodation made by the builder. As a result, Schumacher Homes offered approximately $10,000 in credits to the Defendants to allow Defendants to fix Defendants' window trim and shower to their satisfaction.

32.     McDowell County's Building Inspection Department inspected Defendants' home and the work conducted by Schumacher Homes or its subcontractors on numerous occasions.

33.     McDowell County's Building Inspection Department conducted periodic inspections of the Defendants' home throughout the construction process.  Any violations of the North Carolina Building Code identified by McDowell County Inspections Department were promptly corrected and passed inspection to the Building Department's satisfaction.

34.     As the construction of the Defendants' home neared completion, McDowell County Building Inspection Department issued a "Certificate of Occupancy" for Defendants' home.

35.     A "Certificate of Occupancy" is a document issued by a local government agency certifying a building's compliance with applicable building codes and laws, which certifies that the building is in a condition suitable for occupancy.

36.     At the close of construction, Defendants identified a few minor workmanship issues related to Defendants' home.

37.     Defendant Keith Buchanan signed a punch list detailing the issues and requested that Schumacher Homes correct the issues.

38.     Schumacher Homes corrected all items identified on the punch list.

39.     Shortly after moving into their home, Defendants contacted Schumacher Homes regarding additional workmanship issues that Defendants wished to have addressed.

40.     Schumacher Homes agreed to send its Warranty Representatives to resolve the issues.

41.     However, Defendants did not grant Schumacher Homes' Warranty Representatives access to Defendants' home, ostensibly because Thanksgiving was approaching.

42.     After Thanksgiving, Defendants refused to engage with Plaintiffs' Warranty Representatives, thereby denying Schumacher Homes access to Defendants' home.

43.     As a result, Defendants did not provide Schumacher Homes with an opportunity to resolve any of the alleged issues.

44.     Although Defendants would not allow a Schumacher Homes representative to evaluate the home or address any of the Defendants' concerns, allegedly due to the approaching holiday season, Defendants, nevertheless, allowed a third-party inspector to inspect the house on or about December 12, 2019.

45.     Defendants also refused to pursue the requisite arbitration through American Arbitration Association regarding any alleged deficiencies in their home, which was mandated by the contract governing the construction of Defendants' home.

46.     Instead, Defendants maliciously, willfully, and wantonly designed and implemented an electronic mailing campaign and website that targeted Plaintiffs' current and prospective clients with the purpose of damaging Plaintiffs' business reputation and brand and reducing its volume of business.

C.     DEFENDANTS' E-MAIL CAMPAIGN

47.     Plaintiffs incorporate and re-allege the preceding paragraphs as if fully set forth herein.

48.     Upon information and belief, Defendants obtained Plaintiffs' clients' information from building permits, which are matters of public record.

49.     Upon information and belief, Defendants started an electronic mailing campaign in 2021, wherein Defendants directly contacted Plaintiffs' clients to spread false and misleading information regarding Plaintiffs.

50.     Defendants published to third parties, including, but not limited to the Plaintiffs' clients, knowingly false and misleading statements by stating, *inter alia*, that:

    a.    Plaintiffs "lack… job site supervision" by failing to have a General Contractor present onsite at all times during building and construction phase. This phrase is not only false, since Schumacher Homes is a licensed general contractor acting by and through its onsite construction managers, but also falsely suggests, when read in context of the Defendants' overall publication, that this alleged failure is somehow a violation of North Carolina law or industry standard.

    b.    Plaintiffs use "unqualified and/or untrained labor."

    c.    Plaintiffs use "inferior or differentiating components than advertised."

    d.    Banks and financial institutions refuse to issue mortgages, loans, and other financial lending options relating to homes built by Plaintiffs.

    e.    Schumacher Homes Inc. is banned from building homes in neighborhoods.

51.     Defendants were not party to any of the negotiations or contracts Plaintiffs had with its clients.

52.     Defendants had no legitimate business interest that would justify contacting Plaintiffs' clients.

53.     Plaintiffs' ongoing work over more than two decades and Schumacher Homes' award-winning development of an established brand has resulted in an increasing stream of business throughout the country, including in North Carolina.

54.     As a result of Defendants' statements, which were made with Defendants' knowledge of their untruthfulness and/or Defendants' reckless indifference to their lack of truthfulness, the Plaintiffs have suffered, and continue to suffer, irreparable harm to their business, brand, goodwill, and reputation, as well as significant financial loss.

**D.      DEFENDANTS' WEBSITE**

55.     Plaintiffs incorporate and re-allege the preceding paragraphs as if fully set forth herein.

56.     Upon information and belief, Defendants designed and created a website called "https://schumachervictims.com" (hereinafter "the website') on or about April 8, 2021 to knowingly disseminate false and misleading information concerning the Plaintiffs.

57.     Upon information and belief, Defendants, at all times relevant to this litigation, have exercised dominion and control over the website, including the content that is published on the website.

58.     Upon information and belief, Defendants or persons or entities acting at the direction of the Defendants uploaded photographs taken of Defendants' home to the website.

59.     Upon information and belief, Defendants or persons or entities acting at the direction of the Defendants uploaded photographs to the website taken during the inspection of Defendants' home by Affordable Inspections, Inc.

60.     Defendants, via the website, published to third parties, including but not limited to the Plaintiffs' current and prospective clients, knowingly false and misleading statements on the website by stating, *inter alia*, the following:

a.      Plaintiffs "lack… job site supervision" by failing to have a General Contractor present onsite at all times during building and construction phase. This phrase is not only false, since Schumacher Homes is a licensed general contractor acting by and through its onsite construction managers, but also falsely suggests, when read in context of the Defendants' overall publication, that this alleged failure is somehow a violation of North Carolina law or industry standard

b.      Plaintiffs use "unqualified and/or untrained labor."

c.      Plaintiffs use "inferior or differentiating components than advertised."

d.      Banks and financial institutions refuse to issue mortgages, loans, and other financial lending options relating to homes built by Plaintiffs.

e.      Schumacher Homes Inc. is banned from building homes in neighborhoods.

61.     Defendants' characterization of their website as an "advocacy group" misleads the public by insinuating that there are numerous "victims" of Schumacher Homes, Inc., when, in fact, the website was created by two individuals, the Defendants, in order to further their own apparent vendetta against Plaintiffs, specifically to damage Plaintiffs' business reputation, profession, and means of livelihood and to reduce Plaintiffs' volume of business.

## E.     THIS LITIGATION

62.     If Defendants continue to disseminate these false and misleading statements, Plaintiffs will continue to suffer irreparable harm to their reputation, brand, and business.

63. As a result, Plaintiffs are left with no choice but to defend their reputation, brand, goodwill, and business in this Court.

### FOR A FIRST CAUSE OF ACTION
### (Declaratory Judgment)

64. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

65. Plaintiffs seek a declaratory ruling that the following statements made by the Defendants are patently false:

    a.    Plaintiffs "lack… job site supervision" by failing to have a General Contractor present onsite at all times during building and construction phase.

    b.    Plaintiffs use "unqualified and/or untrained labor."

    c.    Plaintiffs use "inferior or differentiating components than advertised."

    d.    Banks and financial institutions refuse to issue mortgages, loans, and other financial lending options relating to homes built by Plaintiffs.

    e.    Schumacher Homes Inc. is banned from building homes in neighborhoods.

66. The statements in Paragraph 51(a) and (b) are patently false by virtue of, *inter alia*, the following, as well as other applicable laws, regulations, and codes:

    a.    Pursuant to N.C. Gen. Stat. 87-1, a "General Contractor" is defined as "…any person or ***firm or corporation*** who… undertakes to superintend or manage, on his own behalf ***or for any person, firm or corporation that is not licensed as a general contractor***…" (emphasis added).

    b.    Accordingly, Schumacher Homes <u>is</u> a General Contractor in the State of North Carolina and is permitted to manage persons, firms, or corporations that are not licensed as a general contractor.

c.      Pursuant to 21 NCAC 12A.0205, the Qualified General Contractor "shall be a responsible managing employee, officer, or member of the personnel of the [General Contractor]."

d.      21 NCAC 12A.0205 defines "responsible managing" as "a person who is engaged in the work of the [General Contractor] a minimum of 20 hours per week."

e.      Smothers, as the Qualified General Contractor, engages in the work of Schumacher homes in excess of 20 hours per week.

f.      Schumacher Homes diligently vets its subcontractors to ensure the work being performed on residential home projects meets or exceeds the North Carolina Building Code requirements and applicable industry standards.

g.      Accordingly, Plaintiffs' subcontractors and Plaintiffs' supervision of the same are permitted under North Carolina law.

67.     The statements in Paragraph 51(c) are patently false by virtue of the explicit and unambiguous terms in the valid contract between Plaintiffs and Defendants that governed the building of Defendants' home, attached hereto as Exhibit A, as well as all applicable laws, regulations, and codes.

68.     The statement in Paragraph 51(d) is patently false by virtue of the fact that Schumacher Homes constantly works with over eighty (80) banking and financial institutions across the United States and has never been rejected by a banking institution by reason of poor quality workmanship, NC Building Code Violations or improper construction practices..

69.     The statement in Paragraph 51(e) is patently false by virtue of the fact that Schumacher builds homes in neighborhoods throughout the United States, including in the State

of North Carolina. and has never been banned from building in a particular neighborhood by reason of poor-quality workmanship, NC Building Code violations or improper construction practices.

70.     Accordingly, Plaintiffs seek injunctive relief, barring Defendants from further publishing the false statements and to enforce the declarations sought in this Complaint.

**FOR A SECOND CAUSE OF ACTION**
**(Commercial Defamation)**

71.     Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

72.     Upon information and belief, Defendants acted as joint conspirators as to each of the causes of action set forth herein, and thus, Plaintiffs incorporate by reference the preceding allegations of Plaintiffs' joint conspiracy, as if fully set forth herein.

73.     Defendants defamed the Plaintiffs by maliciously, willfully, and wantonly publishing false and misleading statements to third parties, including, but not limited to the Plaintiffs' current and prospective clients.

74.     These defamatory statements include, but are not limited to, the following:

    a.     Plaintiffs "lack… job site supervision" by failing to have a General Contractor present onsite at all times during building and construction phase.

    b.     Plaintiffs use "unqualified and/or untrained labor."

    c.     Plaintiffs use "inferior or differentiating components than advertised."

    d.     Banks and financial institutions refuse to issue mortgages, loans, and other financial lending options relating to homes built by Plaintiffs.

    e.     Schumacher Homes Inc. is banned from building homes in neighborhoods.

75.     These false and defamatory statements were made by the Defendants with the intention and purpose of injuring the business reputation, brand, and goodwill of Plaintiffs.

76. The statements were made with knowledge of their untruthfulness or with reckless indifference to their lack of truthfulness.

77. The untruthful statements were made in derogation of the Plaintiffs' trade or occupation and, therefore, constitute defamation *per se*.

78. The defamatory, misleading, and injurious nature of the statements made by Defendants is further evidenced when considering innuendo, colloquium, and explanatory circumstances.

79. Plaintiffs have incurred permanent and severe harm to business brand, reputation, and goodwill as a result of Defendants' untruthful statements to persons with whom Plaintiffs have business dealings.

80. As a result of the Defendants' actions, Plaintiffs are entitled to recover actual and punitive damages, including but not limited to pecuniary loss; loss of reputation; loss of association; loss of public trust; additional debts for attorney's fees; loss of profits; and other pecuniary losses from Defendants.

## FOR A THIRD CAUSE OF ACTION
### (Tortious Interference with Prospective Economic Advantage)

81. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

82. Upon information and belief, Defendants acted as joint conspirators as to each of the causes of action set forth herein, and thus, Plaintiffs incorporate by reference the preceding allegations of Plaintiffs' joint conspiracy, as if fully set forth herein.

83. Defendants, without justification, intentionally induced third parties to refrain from entering into contracts with Plaintiffs, which would have been made absent the Defendants' interference.

84.     Specifically, Defendants published false and misleading statements to third parties, including Plaintiffs' prospective clients.

85.     The false and misleading statements include, but are not limited to, the following:

a.     Plaintiffs "lack… job site supervision" by failing to have a General Contractor present onsite at all times during building and construction phase.

b.     Plaintiffs use "unqualified and/or untrained labor."

c.     Plaintiffs use "inferior or differentiating components than advertised."

d.     Banks and financial institutions refuse to issue mortgages, loans, and other financial lending options relating to homes built by Plaintiffs.

e.     Schumacher Homes Inc. is banned from building homes in neighborhoods.

86.     The defamatory, misleading, and injurious nature of the statements made by Defendants is further evidenced when considering innuendo, colloquium, and explanatory circumstances.

87.     The statements regarding Plaintiffs were made without justification because Defendants had no legitimate business interest in the subject matter thereof.

88.     Clearly the Defendants' motive is not for the lawful purpose of seeking redress for any alleged problems with their own home, since prior to making these statements and embarking on a course of unlawful conduct, Defendants refused to exercise their sole and exclusive right to bring a contractually-mandated arbitration action against Plaintiffs, and instead chose to encourage other customers not to do business with Plaintiffs.

89.     As a result, Defendants induced Plaintiffs' prospective clients to refrain from entering into a contract with Plaintiff, which would have been made absent the Defendants' interference.

90.     Plaintiffs have been told by some prospective customers that they would have entered into contracts with Plaintiffs for custom home construction but for the information described above that was published by Defendants via e-mail and/or the website.

91.     Defendants' actions resulted in actual damages to Plaintiffs, including but not limited to pecuniary loss; loss of reputation; loss of association; loss of public trust; additional debts for attorney's fees; loss of profits; and other pecuniary losses in an amount to be proven at trial.

92.     Defendants' actions were willful, wanton, and malicious, and Plaintiffs are entitled to recover punitive damages from Defendants.

93.     Plaintiffs will continue to be irreparably harmed if Defendants are allowed to continue to interfere with its actual and prospective contracts with customers, and Plaintiffs are entitled to a temporary restraining order, as well as preliminary and permanent injunctions.

### FOR A FOURTH CAUSE OF ACTION
### (Tortious Interference with Contract)

94.     Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

95.     Upon information and belief, Defendants acted as joint conspirators as to each of the causes of action set forth herein, and thus, Plaintiffs incorporate by reference the preceding allegations of Plaintiffs' joint conspiracy, as if fully set forth herein.

96.     By their false and defamatory statements published via e-mail and on the website, Defendants intentionally induced customers with whom Schumacher Homes already had contracts

to build custom homes to terminate those contracts, thereby diverting their business away from Plaintiffs.

97. Defendants' actions in inducing the Plaintiffs' customers to terminate their contracts were without legal justification.

98. Defendants' actions resulted in actual damages, including but not limited to pecuniary loss; loss of reputation; loss of association; loss of public trust; additional debts for attorney's fees; loss of profits; and other pecuniary losses to Plaintiffs in an amount to be proven at trial.

99. Defendants' actions were willful, wanton, and malicious, and Plaintiffs are entitled to recover punitive damages from Defendants.

100. Plaintiffs will continue to be irreparably harmed if Defendants are allowed to continue to interfere with its contracts with customers, and Plaintiffs are entitled to a temporary restraining order, as well as preliminary and permanent injunctions.

## FOR A FIFTH CAUSE OF ACTION
### (Unfair and Deceptive Business Practices)

101. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

102. Upon information and belief, Defendants acted as joint conspirators as to each of the causes of action set forth herein, and thus, Plaintiffs incorporate by reference the preceding allegations of Plaintiffs' joint conspiracy, as if fully set forth herein.

103. Defendants' misconduct as set forth above is unfair and deceptive within the meaning of N.C. Gen. Stat. §75-1.1.

104. Defendants' unfair and deceptive conduct is in and affecting commerce.

105. Defendants' unfair and deceptive conduct proximately caused actual damages to Plaintiffs, including but not limited to pecuniary loss; loss of reputation; loss of association; loss of public trust; additional debts for attorney's fees; loss of profits; and other pecuniary losses.

106. Plaintiffs are entitled to recover treble damages from Defendants pursuant to N.C. Gen. Stat. §75-16.

107. Plaintiffs are entitled to recover their reasonable attorneys' fees from Defendants pursuant to N.C. Gen. Stat. §75-16.1.

### FOR A SIXTH CAUSE OF ACTION
### (CIVIL CONSPIRACY)

108. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

109. Upon information and belief, the individual Defendants entered into an implicit or explicit agreement with each other, and potentially with other third parties as may be shown through discovery and at trial, to do an unlawful act or to do a lawful act in an unlawful way resulting in injury to Plaintiffs that was inflicted by one or more of the conspirators and pursuant to a common scheme.

110. Upon information and belief, the Defendants completed wrongful overt acts, unlawful acts, or lawful acts done in an unlawful way in furtherance of the conspiracy as alleged in the instant Complaint and the other causes of action, which are incorporated herein by reference as if fully set forth herein.

111. Upon information and belief, the overriding purpose of said civil conspiracy was to damage Plaintiffs' business reputation, profession, and means of livelihood and to reduce Plaintiffs' volume of business.

112. Upon information and belief, as to each cause of action, there was at least one overt act by Defendants, and potentially additional third parties as may be shown through discovery and

at trial, in furtherance of the conspiracy.

113. By publishing the statements described in the instant Complaint to third persons, including but not limited to Plaintiffs' prospective and current clients, Defendants defamed the Plaintiffs with malice and acted in furtherance of the civil conspiracy to damage Plaintiffs' business reputation, profession, and means of livelihood and to reduce Plaintiff's volume of business.

114. As a result, the Defendants are jointly and severally liable pursuant to each of the causes of action set forth in the instant Complaint and also for compensatory damages, , including but not limited to pecuniary loss; loss of reputation; loss of association; loss of public trust; additional debts for attorney's fees; loss of profits; and other pecuniary losses, which are incorporated by reference as if set forth herein, as the Defendants have acted in concert in a civil conspiracy to harm the Plaintiffs.

WHEREFORE, Plaintiffs respectfully request that this Court:

1. Declare that Defendants' statements described in Paragraph 51 of this Verified Complaint are false;

2. Grant temporary, preliminary, and permanent injunctive relief to effectuate the relief requested, as more fully set forth in the Motion for Temporary Restraining Order and Preliminary Injunction filed contemporaneously herewith;

3. Issue judgment against the Defendants for actual and punitive damages in an amount to be determined by the jury;

4. Issue judgment against the Defendants for treble damages for their unfair and deceptive business practices;

5. Issue judgment against all Defendants for the attorneys' fees, costs, and disbursements incurred by Plaintiffs in this action; and

6. For such other and further relief as this Court deems just and proper.

BARNWELL WHALEY PATTERSON & HELMS, PLLC

_/s/ Christopher M. Hinnant_
Christopher M. Hinnant, Esq.
NC Bar No. 24297
E-mail: chinnant@barnwell-whaley.com

_/s/ Paul H. Derrick_
Paul H. Derrick, Esq.
NC Bar No. 27366
E-mail: pderrick@barnwell-whaley.com

201 North Front Street, Suite 1003
Wilmington, North Carolina 28401
Telephone: (910) 679-1338

**COUNSEL FOR PLAINTIFFS**

September 28, 2021
Wilmington, North Carolina

{01113854.DOCX.1 }

## VERIFICATION

I am a named Plaintiff and representative of the other named Plaintiff, Schumacher Homes of North Carolina, Inc., in the matter of *Schumacher Homes of North Carolina, Inc. and Richard Smothers v. Keith Buchanan and Dianna Buchanan.* I have read the Verified Complaint and know that the contents thereof are true and correct of my own knowledge, except as to those matters and things stated upon information and belief, and as to those I believe them to be true and correct.

* * *

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing statements are true and correct.

Date: 9-14-21

RICHARD SMOTHERS

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that today the foregoing document was electronically filed using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

This 28th day of September, 2021.

_____*/s/ Paul H. Derrick*_____
Paul H. Derrick
