UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:21-cv-00260-MOC-WCM

| | | |
|---|---|---|
| SCHUMACHER HOMES OF NORTH CAROLINA, INC. AND RICHARD SMOTHERS, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | ORDER |
| DIANNA BUCHANAN AND KEITH BUCHANAN, | ) ) ) ) | |
| Defendants. | ) | |

**THIS MATTER** is before the Court on Plaintiff's Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction (Doc. No. 3).

Plaintiffs filed this Motion along with their Complaint (Doc. No. 1) and a Declaration by Plaintiff Richard Smothers (Doc. No. 2) in this action on September 28, 2021. Defendants filed an Affidavit in opposition to this motion on October 1, 2021 (Doc. No. 9). The Court heard argument from both parties on October 4, 2021.

Upon considering the arguments presented by both parties, this Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion for a TRO and Preliminary injunction. Specifically, the Court grants Plaintiffs' request for an Order preventing Defendants from communicating with Plaintiffs' customers and potential customers, although the Court's order will be limited to <u>unsolicited electronic</u> communications. However, the Court denies Plaintiffs' other requests because they have not satisfied the four factors of the <u>Winter</u> test needed to grant the "extraordinary remedy" of a preliminary injunction as to those requests.

## I. BACKGROUND

This case arises out of a dispute between Plaintiffs and Defendants over Plaintiffs' construction of Defendants' home, which Defendants allege was defective. (Doc. No. 9-1 at 2–5). As a result, Defendants have set up the website "schumachervictims.com" and have communicated with former, existing, and prospective customers of Plaintiffs. (Id.). Plaintiff Richards Smothers characterizes this as a "smear campaign," but Defendant Keith Buchanan "vehemently den[ies] that [he] has communicated anything other than the truth in [his] representations about Schumacher Homes." (Doc. No. 2 at 2; Doc. No. 9-1 at 2). The Matter is before the Court on Plaintiffs' Motion for TRO and Preliminary Injunction to restrain Defendants from continuing to operate their website and communicate with Plaintiffs' customers. (Doc. No. 3).

Plaintiff Schumacher Homes is "one of the largest residential, custom home builders in the United States" and is licensed as a general contractor in North Carolina. (Doc. No. 1 at 2). Plaintiff Richard Smothers is a general contractor with an unlimited license in North Carolina and is Schumacher Homes' qualifying general contractor in North Carolina. (Id. at 4). Defendants Keith and Dianna Buchanan are married residents of McDowell County, North Carolina who contracted with Plaintiffs to build a home.

## II. LAW GOVERNING TROs AND PRELIMINARY INJUNCTIONS

Applications for issuance of a TRO and Preliminary Injunction are governed by FED. R. CIV. P. 65(b). However, "when the opposing party actually receives notice of the application for a restraining order, the procedure that is followed does not differ functionally from that of an

application for a preliminary injunction." Wright and Miller, 11A Fed. Prac. & Proc. Civ. § 2951 (3d ed.).

In evaluating a request for a TRO, the court considers the same factors applied for a preliminary injunction. <u>Pettis v. Law Office of Hutchens, Senter, Kellam & Pettit</u>, No. 3:13-CV-00147-FDW, 2014 WL 526105, at *1 (W.D.N.C. Feb. 7, 2014) (citing <u>Hoechst Diafoil Co. v. Nan Ya Plastics Corp.</u>, 174 F.3d 411 (4th Cir. 1999)). In assessing such factors, a plaintiff must demonstrate that: (1) it is likely to succeed on the merits; (2) it will likely suffer irreparable harm absent an injunction; (3) the balance of hardships weighs in its favor; and (4) the injunction is in the public interest. <u>League of Women Voters of N. Carolina v. N. Carolina</u>, 769 F.3d 224, 236 (4th Cir. 2014), <u>cert. denied,</u> 135 S. Ct. 1735 (2015) (<u>citing</u> <u>Winter v. Natural Res. Def. Council, Inc.</u>, 555 U.S. 7, 20 (2008)).

### III. DISCUSSION

The Court finds that Plaintiffs have satisfied the <u>Winter</u> test and are entitled to a TRO and Preliminary Injunction on the issue of Defendants' communication with their current and prospective customers for the reasons set forth in Section A. The Court will therefore issue an Order similar to but narrower than the one requested by Plaintiffs on this issue. However, the Court finds that Plaintiffs have not satisfied the <u>Winter</u> test as to their other requests, as explained in Section B, and therefore the Court will deny these requests.

A. *Plaintiffs have Satisfied the <u>Winter</u> Test as to a Limited Order Preventing Defendants from Engaging in Unsolicited Electronic Communication with Plaintiffs' Current and Prospective Clients*

Plaintiffs allege and Defendants concede that they "have made contact with many of Schumacher's former, existing, and prospective customers." (Doc. No. 9-1 at 2). Plaintiffs ask the Court to restrain Defendants from continuing with this activity while this litigation proceeds

by issuing a TRO and Preliminary Injunction. (Doc. No. 3). Specifically, Plaintiffs ask the Court to prevent Defendants from "contacting, directly or indirectly, current and prospective clients of Schumacher Homes via e-mail, Internet, or other means." (Id.). For the following reasons, the Court will order Defendants to refrain from unsolicited email communication—a similar but somewhat narrower order than that requested by Plaintiffs.

As explained above, in order to obtain a TRO and Preliminary Injunction "a plaintiff must demonstrate that "(1) it is likely to succeed on the merits; (2) it will likely suffer irreparable harm absent an injunction; (3) the balance of hardships weighs in its favor; and (4) the injunction is in the public interest." League of Women Voters, 769 F.3d at 236. The Court will address each factor in turn.

Likelihood of Success on the Merits. In order to show a likelihood of success on the merits, Plaintiffs must demonstrate more than a "grave or serious question for litigation" but need not show "a certainty of success." Roe v. Shanahan, 359 F.Supp.3d 382, 411 (E.D. Va. 2019) (quoting League of Women Voters, 769 F.3d at 247; Sarsour v. Trump, 245 F.Supp.3d 719, 729 (E.D. Va. 2017)). Plaintiffs have demonstrated a likelihood of success on the merits with respect to Defendants communications with their current and prospective customers.

With respect to Plaintiffs' current clients, Plaintiffs have established a likelihood of success on the merits with their claim of tortious interference with contract. Under North Carolina law, in order to successfully maintain an action for tortious interference with contract Plaintiffs must show: "1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; 2) the defendant knows of the contract; 3) the defendant intentionally induces the third person not to perform the contract; 4)

-4-

and in doing so acts without justification; 5) resulting in actual damage to plaintiff." Beverage Sys. of the Carolinas, LLC v. Associated Beverage Repair, LLC, 784 S.E.2d 457, 462 (N.C. 2016) (citing United Labs., Inc. v. Kuykendall, 370 S.E.2d 375, 397 (N.C. 1988)). "Interference with a contract is 'justified if it is motivated by a legitimate business purpose, as when the plaintiff and the defendant, an outsider, are competitors.'" Id. (citing Embree Constr. Grp., Inc. v. Rafcor, Inc., 411 S.E.2d 916, 924 (N.C. 1992)).

As discussed, Defendants concede that they communicated with Plaintiffs' current customers, suggesting that the first and second elements are satisfied. (Doc. No. 9-1 at 2). Defendants' communications appear to be aimed at disrupting Plaintiffs' contracts with these customers, satisfying the third element. Defendants may not be acting with "justification" as it is understood under North Carolina law, which requires a "legitimate business purpose"; therefore, the fourth element may well be satisfied. Finally, as Plaintiffs represented during oral argument and Defendants did not contest, Plaintiffs will suffer financial harm if existing customers cancel their contracts, satisfying the fifth element. Therefore, the Court finds that Plaintiffs have demonstrated a likelihood of success on the merits as to their tortious interference with contract claim.

With respect to Plaintiffs' prospective clients, Plaintiffs have established a likelihood of success on the merits with their claim of tortious interference with prospective economic advantage. "This tort arises when a party interferes with a business relationship 'by maliciously inducing a person not to enter into a contract with a third person, which he would have entered into but for the interference, ... if damage proximately ensues, when this interference is done not

in the legitimate exercise of the interfering person's rights.'" Beverage Sys., 784 S.E.2d at 463 (citing Spartan Equip. Co. v. Air Placement Equip. Co., 140 S.E.2d 3, 11 (N.C. 1965)).

As discussed, Defendants have been communicating with Plaintiffs' prospective customers. The Court finds that these communications likely have the effect of preventing these customers from entering into contracts with Plaintiffs and that Plaintiffs could likely be financially harmed as a result. While the parties are likely to dispute whether the communications were "malicious" or justified in the course of this litigation, the Court finds that Plaintiffs have sufficiently made out a case for tortious interference with prospective economic advantage to establish a likelihood of success on the merits.

Irreparable Harm. Plaintiffs must also show that, absent a TRO and Preliminary Injunction, they will likely suffer "irreparable harm." Preliminary injunctions should not be granted when there is only a "possibility of irreparable harm" because a preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter, 555 U.S. at 22 (citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam)). "Mere injuries, however substantial … are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Sampson v. Murray, 415 U.S. 61, 90 (1974).

In this case, Plaintiffs have shown that irreparable harm is likely. Plaintiffs have documented and orally represented through counsel that they have lost significant business, probably as a result of Defendants' actions. (Doc. No. 2, Exhibits B–M). Beyond mere financial harm which may be remediable in the course of litigation (assuming Defendants have adequate

-6-

Case 1:21-cv-00260-MOC-WCM   Document 12   Filed 11/29/21   Page 6 of 12

financial resources to satisfy a potential judgment in favor of Plaintiffs), the damage to Plaintiffs' reputation would likely be irreparable. Plaintiffs attest that they have devoted considerable resources to developing a reputation for quality in the building industry, having "invested literally millions of dollars developing and solidying [their] brand," and this would likely be jeopardized by the continuation of Plaintiff's email campaign. (Doc. No. 2 at 2).

As a major nationwide home builder, Plaintiff Schumacher Homes has undoubtedly encountered criticism in a public forum before. But Defendants' practice of sending unsolicited emails to Plaintiff Schumacher Homes' current and prospective customers rises to a higher level, directly harming economic relationships which Plaintiff has established or is attempting to established. Therefore, the Court finds that allowing Defendants to continue with their campaign of unsolicited communications is likely to cause irreparable harm to Plaintiffs.

The balance of hardships weighs in Plaintiffs' favor. In assessing the balance of hardships, the Court compares the likely hardship caused by a TRO and Preliminary Injunction on Defendants with the hardship caused by the Court's denial of a TRO and Preliminary Injunction for Plaintiffs. The Court finds that the hardship for Defendants in requiring them to pause their email campaign with Plaintiffs' customers is slight, while the hardship for Plaintiffs in allowing Defendants to continue their campaign is significant.

As discussed below, Defendants will only be prohibited from unsolicited electronic communications with Plaintiffs' current and prospective customers during the pendency of this litigation. They will still be permitted to operate their website and engage in solicited communication with Plaintiffs' current and prospective customers. This would include ongoing communications with disgruntled customers whom they have already contacted, including the

ten who have already come forward according to Defendants' affidavit. (Doc. No. 9-1 at 4). It would also include other disgruntled homeowners who contact Defendants of their own volition, including after hearing about Defendants' campaign through their website and other means. Defendants will still be able to express their views on the quality of Plaintiffs' work and organize with others in spite of this TRO and Preliminary Injunction. Therefore, the Court finds that the hardship imposed by this TRO and Preliminary Injunction on Defendants is slight.

In contrast, the hardship imposed on Plaintiffs resulting from allowing Defendants to continue their email campaign is significant. As discussed above with respect to irreparable harm, Plaintiffs have presented credible evidence that their business will be harmed by this campaign. Therefore, the hardship in allowing Defendants to continue this campaign is significant.

The injunction is in the public interest. Finally, the Court finds that this injunction is in the public interest. The Court must strike a balance between Plaintiffs' legitimate right to protect their business interests from tortious interference and upholding the First Amendment, which protects both Defendants' right to express their opinion and the right of consumers in the marketplace to hear their opinion. See Bigelow v. Virginia, 421 U.S. 809, 818–819 (1975); Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc., 425 U.S. 748, 762–765 (1976).

The Court believes that this TRO and Preliminary Injunction strikes the appropriate balance. Defendants will still be allowed to fully express themselves on their website, to the media, and in other public forums. This adequately protects their First Amendment interests and those of the public. Defendants will only be prohibited from specifically seeking out Plaintiffs'

current and prospective customers and sending unsolicited electronic communications to them. This will protect Plaintiffs from potential tortious interference with contract and prospective economic advantage during the pendency of this litigation, and minimally burdens the First Amendment interests at play in this case.

   B. *Plaintiffs have not Satisfied the <u>Winter</u> Test as to the Remaining Aspects of their Motion*

However, the Court finds that Plaintiffs have not satisfied the <u>Winter</u> test as to the other aspects of their requested TRO and Preliminary Injunction. In their Motion for TRO and Preliminary Injunction, Plaintiffs ask the Court to enjoin Defendants from "(1) tortiously interfering with Schumacher Homes' current and prospective client relationships; (2) contacting, directly or indirectly, current and prospective clients of Shumacher Homes via e-mail, Internet, or other means; (3) publishing false and defamatory information about Plaintiffs and their business operations; (4) maintaining and allowing to remain active the website www.schumachervictims.com, or any website that is the same or substantially similar to it; (5) making any public statement(s) about Plaintiffs except as may be expressly allowed or directed by the Court; and (6) such other and further relief the Court deems just and equitable." (Doc. No. 3 at 2).

The Court has largely granted Plaintiffs' first two requests in its Order prohibiting Defendants from engaging in unsolicited electronic communications with Plaintiffs' current and prospective customers. For the reasons explained above, the Court believes this will largely prevent Defendants from interfering with Plaintiffs' contracts and prospective economic advantages without unduly burdening Defendants' free speech interests and those of the marketplace. The Court notes that its Order is somewhat narrower than Plaintiffs' broader language, largely due to the need to protect the First Amendment interest at play. In addition, the

-9-

Case 1:21-cv-00260-MOC-WCM   Document 12   Filed 11/29/21   Page 9 of 12

Court notes that Plaintiffs do not request, and the Court does not grant, any restriction on Defendants from contacting Plaintiffs' former customers.

However, the Court finds that Plaintiffs have not satisfied the Winter factors as to their remaining requests. Therefore, the Court declines to issue an order restraining Plaintiffs from publishing information, operating a website, and making public statements without the Court's permission.

First, the balance of the hardships does not weigh in Plaintiffs' favor on these issues. While the hardship imposed on Defendants from ordering them to refrain from unsolicited electronic communication with Plaintiffs' current and prospective customers is slight, the hardship that ordering them to completely stop expressing their views on Plaintiffs' business practices whether in print, on the internet, or in a public forum would be very substantial and quite possibly unconstitutional. While it is true that false and defamatory speech may not enjoy constitutional protection, the time to determine whether Defendants' statements are, in fact, false and defamatory is at trial—not during consideration of a TRO and Preliminary Injunction.

Furthermore, while the burden on Plaintiffs of allowing Defendants to engage in unsolicited electronic communication with current and prospective customers may be significant, the burden of allowing Defendants to continue to express themselves is slight. Plaintiff Schumacher Homes "is one of the largest residential, custom home builders in the United States," having "built over 19,000 homes across 22 states since its formation in the early 1990s." (Doc. No. 1 at 2). In the course of their business, Plaintiffs have surely encountered public criticism. They also appear to have garnered significant accolades, which they document in their Complaint. (Id. at 3). Plaintiffs are more than capable of defending their reputation in the public

forum, and the burden to Plaintiffs from allowing Defendants views to continue to express their views is slight.

Second, and for similar reasons, the Court is not satisfied that Plaintiffs will suffer irreparable harm if Defendants are allowed to continue participating in the public forum and expressing their views of Plaintiffs' business practices, however negative. Plaintiff Schumacher Homes is a major national home builder, has undoubtedly encountered criticism online and in other forums before, and can point to numerous accolades to defend its reputation. (Id.). The harm of allowing Defendants' criticism in public forums to continue could be repaired by money damages and further publicity by Plaintiffs, if Plaintiffs succeed on the merits. In the words of Justice Brandeis, the best solution is to allegedly wrongful speech is "more speech, not enforced silence." Whitney v. California, 274 U.S. 357, 377 (1927).

Plaintiffs have not shown that the balance of hardships favors them with respect to their remaining requests, nor have they shown that they would suffer irreparable harm if the Court did not grant these requests. Because all four Winter factors must be satisfied for a TRO and Preliminary Injunction and Plaintiffs have failed to satisfy these two, the Court declines to reach the other factors. Plaintiffs have failed to satisfy the Winter test as to their other requests, and these requests will therefore be denied.

## IV. CONCLUSION

Plaintiffs have satisfied the Winter factors as to the request in their Motion that the Court order Defendants to stop their email campaign. However, the Court's Order will be limited to prohibiting unsolicited electronic communications with Plaintiffs' current and prospective customers in order to protect the First Amendment interests at play in this case.

Plaintiffs have not satisfied the Winter factors as to their other requests because they have failed to show that the balance of hardships on these requests is in their favor, nor that there is a likelihood of irreparable harm if these requests are not granted. Therefore, these requests will be denied.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Plaintiffs' Motion for a Temporary Restraining Order (Doc. No. 3) is **GRANTED IN PART** and **DENIED IN PART**.

Defendants are hereby **ORDERED** to refrain from unsolicited electronic communication with Plaintiffs' current and prospective customers.

Signed: November 24, 2021

*[Signature]*

Max O. Cogburn Jr.
United States District Judge