# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# DOCKET NO. 1:21-cv-00260-MOC-WCM

| | |
|---|---|
| SCHUMACHER HOMES OF NORTH CAROLINA, INC. AND RICHARD SMOTHERS, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) ORDER |
| DIANNA BUCHANAN AND KEITH BUCHANAN, | ) ) ) ) |
| Defendants. | ) |

**THIS MATTER** is before the court on Plaintiffs' Motion to Dismiss Defendants' Counterclaims and Compel Arbitration. (Doc. No. 16). The Court heard oral argument on this matter on May 24, 2022. The matter has been fully briefed and is ripe for disposition.

For the following reasons, the motion will be **DENIED**. The Court finds that Plaintiffs waived their right to proceed before an arbitrator by initiating proceedings in this Court. While Plaintiffs claim that the subject matter of their complaint falls outside the ambit of the parties' arbitration clause, that claim is belied by the exceedingly broad language of the arbitration clause itself. Moreover, requiring the parties to litigate two[1] largely duplicative disputes in two different tribunals would significantly prejudice Defendants, would inconvenience witnesses, and contravenes the principle of judicial economy.

---

[1] While Defendants argue in their Response that compelling arbitration would require them to litigate across <u>three</u> tribunals—binding arbitration, nonbinding arbitration, and in this Court—the parties represented to the Court in email correspondence that they have voluntarily dismissed the nonbinding arbitration.

1

## I. BACKGROUND

This case arises out of a dispute between Plaintiffs and Defendants over Plaintiffs' construction of Defendants' home, which Defendants allege was defective. (Doc. No. 9-1 at 2–5; Doc. No. 13 at 13–24).

Plaintiff Schumacher Homes is "one of the largest residential, custom home builders in the United States" and is licensed as a general contractor in North Carolina. (Doc. No. 1 at 2). Plaintiff Richard Smothers is a general contractor with an unlimited license in North Carolina and is Schumacher Homes' qualifying general contractor in North Carolina. (Id. at 4). Defendants Keith and Dianna Buchanan are married residents of McDowell County, North Carolina, who contracted with Plaintiffs to build a home, and now allege that the home Plaintiffs built for them was faulty. (Doc. No. 13 at 13–24).

To spread the word of Plaintiffs' alleged faulty construction, Defendants set up the website "schumachervictims.com" and communicated with Plaintiffs' former, existing, and prospective customers. Plaintiff Richards Smothers characterized this as a "smear campaign," but Defendant Keith Buchanan "vehemently den[ied] that [he] has communicated anything other than the truth in [his] representations about Schumacher Homes." (Doc. No. 2 at 2; Doc. No. 9-1 at 2). In response, Plaintiffs filed suit before this Court seeking damages and injunctive relief, and moved for a Temporary Restraining Order ("TRO") and Preliminary Injunction, asking this Court to enjoin Defendants from continuing their alleged "smear campaign." (Doc. Nos. 1, 3). In their Complaint, Plaintiffs alleged commercial disparagement, tortious interference with prospective economic advantage and with contract, and other causes of action. (Doc. No. 1 at 12–20). This Court granted Plaintiff's motion in part and enjoined Defendants from unsolicited electronic communications with Plaintiffs' customers; however, the Court denied the other preliminary relief

2

sought by Plaintiffs. (Doc. No. 12).

Defendants subsequently filed an answer to Plaintiffs' complaint, broadly denying Plaintiffs' allegations and raising multiple affirmative defenses, including among other things: that their advocacy campaign was protected by the First Amendment; that their statements were merely of opinion; that Plaintiffs' hands are unclean; and, most relevantly, that their allegations against Plaintiffs were true. (Doc. No. 13 at 11–12). In addition, Defendants counterclaimed that Plaintiffs' construction of their home was faulty and that this amounted to breach of contract, negligence, fraud and fraudulent inducement, unfair and deceptive practices, and other causes of action. (Id. at 13–32). Defendants demanded a jury trial and are seeking damages, including punitive and/or treble damages, and attorney fees. (Id. at 33).

Plaintiffs now move to dismiss and compel arbitration. (Doc. Nos. 16, 17). Defendants filed a responsive memorandum and a notice of supplemental authority. (Doc. Nos. 22, 25). Plaintiffs have filed a reply to Defendants' memorandum. (Doc. No. 24).

## II. STANDARD OF REVIEW

### a. Motions to Dismiss under Rule 12(b)(6)

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Detailed factual allegations are not required, but the complaint must include more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must set forth enough facts, accepted as true, to "state a claim to relief that is plausible on its face." Id. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal,

3

556 U.S. 662, 678 (2009) (citation omitted). Deciding whether a claim is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679 (citation omitted).

   b. *Enforcement of Agreements to Arbitrate*

Under the Federal Arbitration Act ("FAA"), federal and state courts are obliged to honor and enforce agreements to arbitrate. Vaden v. Discover Bank, 556 U.S. 49 (2009). The FAA provides, in pertinent part, that "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction… shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Furthermore, arbitration is favored in modern jurisprudence and the FAA manifests "a liberal federal policy favoring arbitration agreements." Adkins v. Lab. Ready, Inc., 303 F.3d 496, 500 (4th Cir. 2002). Any ambiguities as to the scope of the arbitration clause must be resolved in favor of arbitration. Id.

In the Fourth Circuit, a litigant can compel arbitration if the following criteria are met: (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision which purports to cover the dispute; (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect, or refusal of a party to arbitrate the dispute. Adkins, 303 F.3d at 500–01 (quoting Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991)). If these elements are satisfied, then a district court has no choice but to compel arbitration. Id. at 500; see also Gen. Elec. Cap. Corp. v Union Corp. Fin. Grp. Inc., 142 Fed. App'x 150, 152 (4th Cir. 2005).

However, even if the above factors are satisfied, a party seeking arbitration may nonetheless forfeit its right to compel arbitration in cases where it has defaulted on the arbitration

4

clause. Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc., 817 F.2d 253 (4th Cir. 1987). Section 3 of the FAA provides that "a party may demand a stay of federal judicial proceedings pending exercise of a contractual right to have the subject matter decided by arbitration unless the party seeking arbitration is 'in default' of that right." 9 U.S.C. § 3; see Maxum Founds., Inc. v. Salus Corp., 779 F.2d 974, 983 (4th Cir. 1985). A party "defaults" when it "so substantially utilize[es] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." Maxum Founds., 779 F.2d at 981.

### III. DISCUSSION

#### a. Plaintiffs are Making Substantial Use of this Court's "Litigation Machinery"

The Court finds that Plaintiffs defaulted on their right to compel arbitration by bringing the claims in their complaint in this tribunal and by seeking, and obtaining, a preliminary injunction against Defendants. Bringing claims before this Court and obtaining a binding legal order constituted substantial use of this Court's "litigation machinery." Permitting Plaintiffs to proceed with their claims against Defendants in this Court while simultaneously litigating against Defendants before an arbitrator, as Plaintiffs seek to do, would constitute further substantial use of this Court's "litigation machinery."

While Plaintiffs contend that these claims are not covered by the arbitration clause and, thus, could not have been brought before an arbitrator and cannot be heard by the arbitrator now, (Doc. No. 24 at 4–6), this is belied by the extremely broad language of the arbitration clause itself, (Doc. No. 22 at 8–10). The parties' contract provides, in relevant part, that:

> [t]he Parties agree that any claim, dispute, or cause of action, of any nature, including but not limited to, those arising under tort, contract, consumer protection or other statute, equity, law, fraud, intentional tort, breach of statute, ordinance, regulation, code, or other law, or by gross or reckless negligence, arising out of or related to, the negotiations of the Contract Documents, the Home, the Project, materials or services provided to the Home or Property, the performance or non-

5

> performance of the Contract Documents or interactions of Homeowner(s) and Schumacher or its employees, agents, or subcontractors, shall be subject to final and binding arbitration . . .

(Doc. No. 22 at 8, citing Contract ¶ 45). As Defendants contend, this covers essentially all conduct "arising out of" the contract as well as conduct merely "related to" it. (Id. at 8–10). The clause explicitly extends to "intentional torts." Therefore, the plain language of the contract appears to cover Plaintiffs' allegations that Defendants committed intentional torts such as commercial disparagement, because these intentional torts were "related to" the contract. This conclusion is bolstered by the fact that the Court must interpret the contract in favor of arbitrability in light of the FAA's broad policy favoring arbitration. Adkins, 303 F.3d at 500. In addition, the Court must interpret the contract against Plaintiffs as the drafting party. See Novacare Orthotics & Prosthetics E., Inc. v. Speelman, 528 S.E.2d 918, 921 (N.C. App. 2000).

Considering the plain language of the contract (which explicitly includes "intentional torts … related to" the contract), the presumption in favor of arbitrability, and interpreting the contract against Plaintiffs as the drafting party, the Court finds that Plaintiffs' allegations are covered by the arbitration clause. It cannot be that the arbitration is extremely broad when Plaintiffs want to compel arbitration, (Doc. No. 17 at 3–5), but becomes narrow when they want to avoid arbitration, (Doc. No. 24 at 4–6). If Plaintiffs did not want claims like theirs against Defendants to be subject to an arbitration clause, they should not have drafted so broad a clause.

Nonetheless, Plaintiffs are, of course, correct that the clause is not so broad that it would extend to assault by Defendants against Plaintiff Smothers or a vehicular collision between the parties. (Doc. No. 24 at 4–5). An intentional violent assault, even if motivated by grievances related to the construction contract, is too remote from the contract and performance of the contract to be governed by an arbitration clause. But Defendants' statements related to the performance of the

contract, even if allegedly defamatory or tortiously interfering with contract, are not so remote as to be beyond the reach of the parties' exceedingly broad arbitration clause.

To illustrate this conclusion, consider the proceedings which Plaintiffs' hypotheticals would entail: eyewitnesses who saw the assault or crash, medical testimony about related damage or injury, and potentially some discussion of motive in the case of the hypothetical assault. But in a hypothetical case where Defendants violently assaulted Plaintiff Smothers over his construction of their home, it would be no defense for Defendants to argue that Smothers did, in fact, negligently construct their home in breach of the construction contract—or that their assault was motivated by an opinion about the quality of Smothers' work rather than factual allegations. That would be an entirely different proceeding than the one necessary to resolve Defendants' counterclaims, which would focus on the quality of the home Plaintiffs built and would consider the construction contract terms and the applicable standard of care for builders, among other things.

Now consider the proceeding that Plaintiffs' actual claims entail. The main focus of such a proceeding would be on whether Plaintiffs did, in fact, negligently construct Defendants' home in breach of the construction contract. The nature and accuracy of Defendants' statements would be at issue, as would how they communicated such statements to the world. But ultimately the crux of the matter would be a fact-intensive inquiry into the quality of Defendants' home and Plaintiffs' construction practices. This illustrates how Plaintiffs' claims are ultimately "related to" the construction contract in a way that a hypothetical fistfight over the contract would not be.

   b. *Defendants Would be Prejudiced by Compelling Arbitration*

A contracting party waives its right to compel arbitration if that party "so substantially utiliz[es] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." MicroStrategy, Inc. v. Lauricia, 268 F.3d 244, 249 (4th Cir. 2001) (quoting

7

Maxum Founds., 779 F.2d at 981). Waiver requires that the party opposing arbitration encounter "actual prejudice" under the compulsion of arbitration. Fraser, 817 F.2d at 252. Delay and the extent of the moving party's trial-oriented activity are two material factors in determining whether actual prejudice against the opposing party has occurred. Id. at 252. It is well-established in the Fourth Circuit that delay alone is not sufficient to support a finding of waiver, but delay coupled with other prejudicial results is enough to constitute prejudice inducing a waiver of a right to compel arbitration. Maxum Founds., 779 F.2d at 982. See KenAmerican Res., Inc. v. Potter Grandchildren, LLC, 916 F. Supp. 2d 799, 802 (E.D. Ky. 2013) (holding that the opposing party was prejudiced by the moving party's actions: first, in delay by waiting three months to assert its right to arbitration and, second, in causing the opposing party to incur unnecessary expense in pre-trial actions that it otherwise would not have taken in arbitration).

Here, there is plenty of evidence that Plaintiffs' actions prejudiced Defendants. Plaintiffs delayed in seeking binding arbitration for three months after first filing suit in this Court. (Doc. No. 22 at 16; Doc. No. 1). Of course, delay alone is insufficient to support a finding of actual prejudice, but the delay coupled with the inescapable effects of granting Plaintiffs' motion more than meets the standard for prejudice.

Granting Plaintiffs' motion and allowing the arbitration in this case to proceed simultaneously would be duplicative, wasteful, and inefficient. The arbitration and the litigation in this Court would be essentially identical—both require testimony from the same witnesses, require determination of whether Plaintiffs' construction practices were defective, and require resolution of similar legal issues. For example, as explained in detail above, resolution of the defamation claim requires this Court to determine whether Defendants' online claims were truthful, and in so doing, this Court would have to find whether the house built by Plaintiffs was

8

actually faulty—the exact determination to be made by the arbitral proceeding. Furthermore, Defendants would incur roughly twice the legal costs, witnesses would need to take twice the time and resources to testify, and twice the resources would be expended to apply the same law to the same facts in two different tribunals, which would be unnecessary and inefficient. Besides, avoiding duplicative proceedings would not only be in Defendants' best interest, but would prevent Plaintiffs from expending unnecessary resources on a duplicative proceeding as well.

The Court finds not only that Defendants would be prejudiced, but also that the potential prejudice is driven by Plaintiffs' availment of this Court's "litigation machinery." Plaintiffs failed to demand arbitration in this particular matter for its own claims and instead chose to engage in pretrial activity inconsistent with an intent to arbitrate, i.e. filing this lawsuit. Plaintiffs signaled their intent to use the litigation machinery for their own arbitrable claims for the entirety of their case, all while attempting to preclude Defendants from doing so in kind. In other words, Plaintiffs sought to pick and choose where and in front of what tribunal its claims would be most successful while attempting to use the Court to force Defendants' claims (and not their own) into arbitration—a practice that would be plainly prejudicial to Defendants, if permitted.

## ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiffs' Motion to Dismiss Defendants' Counterclaims and Compel Arbitration, (Doc. No. 16), is **DENIED**.

Signed: July 13, 2022



Max O. Cogburn Jr.
United States District Judge